PIERS E. WARBURTON, PLAINTIFF IN ERROR, VS. WALTER R. COUMBE, DEFENDANT IN ERROR.

MECHANICS AND LABORERS LIEN—LIMITATION OF DURATION.

1. Section 10 of Chapter 3747, approved June 3rd, 1887, giving to the book-keepers, clerks, etc., of merchants, transportation companies and other corporations a lien upon the stock, fixtures and other property of such merchants, transportation companies, etc., to the extent of the value of any labor performed in the conduct of their business, does not give such lien to the book-keeper of a person engaged in the saw-mill business upon the mill and other property of his employer.

2. Said Chapter 3747, approved June 3rd, 1887, did not become operative or affective as law until the expiration of sixty days after the final adjournment of the Legislature that enacted it, or, until August, 1887. No lien could be acquired under it for any labor performed *prior* to the time it became operative as law.

3. Under Section 17 of said Chapter 3747 the liens provided for therein spring into existence at the time any labor is done or material is furnished for which a lien is given; and such liens live only for six months from the last day upon which such labor was done or material furnished. If no proceeding is instituted within that time to enforce such liens they lapse and expire.

Writ of Error to the Circuit Court for Polk county.

The facts of the case are stated in the opinion of the court.

*Foster & Gunby*, for Plaintiff in Error.

*Tucker & Clark*, for Defendant in Error.

TAYLOR, J.:

Walter R. Coumbe, the defendant in error, sued Warburton, the plaintiff in error, in the Circuit Court of Polk county, by the summary statutory proceeding in attachment to enforce an alleged laborer's lien upon certain lots of land in Polk county and a steam saw-mill and machinery located thereon. The amount of the claim sued for was $608.79. The lien is claimed and sought to be enforced under the provisions of Chapter 3747, approved June 3rd, 1887. The labor performed, for which the lien is claimed, was chiefly that of book-keeper for the defendant in his saw-mill business, and in other business enterprises in which the defendant was engaged. A notice of the lien was filed in the Circuit Court clerk's office on February 21st, 1888, and the summary suit by attachment to enforce it was instituted on the same day.

The items of the account for which the lien is claimed are as follows:

1885.

| | | | |
|---|---|---|---|
| Jany., 9th. | Part of traveling expenses N. Y. to Acton................ | $10 | 00 |
| | Salary 25th Jany., 1885, to 30th April, 1886, 3 ¼ months, at $40 per month................. | 130 | 00 |
| | Salary 1st May, 1885, to 18th February, 1888, 33 months, 18 days, at $60 per month..... | 2,016 | 00 |

Extra salary while drumming,
from February, 1886, to end
of April, 1887, say 12 months,
at $15 per month.......... 180 00

　　　　　　　　　　　　　　　　$2,336 00
Cr. by payments............. 1,727 21

Balance sued for............. $608 79

The cause was submitted to a jury who returned a verdict for $600, upon which the court entered judgment against the defendant for $600 besides the costs,. and the further sum of $100 as an attorney's fee for the enforcement of the lien. To this judgment the defendant Warburton has sued out a writ of error.

Various errors are assigned, but we shall notice but one of them, as that will dispose of the whole case. The defendant moved for a new trial upon the ground that the verdict was contrary to the evidence, and contrary to law. To sustain his alleged lien the plaintiff testified that Warburton represented various large business interests, such as "Key West Gas Light Co.," agent for Hanbury lands, also general land agent; for all these various agencies I kept the books, attended to the correspondence, and did such other things as directed by Warburton. I was book-keeper and manager for the Acton saw-mill. I also acted as clerk and caterer for the Acton hotel that Mr. Warburton owned during the time I worked for him. He says further that the *saw mill closed down in June, A. D. 1887*, and did not run again up to the time he quit the employment of Warburton. From the time the mill shut down to the time he quit the defendant's employment, he says that he drummed for the sale of the lumber on hand, and also tried to sell the mill. The plaintiff in

his pleadings bases his claim to a lien, under these proofs, upon Section 10 of said Chapter 3747, approved June 3rd, 1887, that is as follows: "Sec. 10. That book-keepers, clerks, agents, porters and other employes of merchants and transportation companies and other corporations, shall have a lien of superior dignity to all others upon the the stock, fixtures and other property of such merchants and transportation companies and other corporations, to the extent of the amount of any labor performed in the conduct of the business of said merchant, transportation company or other corporation." There is no special provision in this statute putting it in force earlier than the time limited by Section 18 of Article III of the Constitution of 1885, for all laws to become effective, *viz:* 60 days after the final adjournment of the legislature enacting them; it did not, therefore, become operative or effective until August, 1887, and no lien could be acquired under it until it became effective. The operations of the mill, on which he claims the lien, were shut down, according to his own evidence, in June, 1887, and it did not resume again during the time of his service. The only service or labor that he performed, in any way connected with the mill business of the defendant, subsequent to June, 1887, was in drumming for the sale of lumber on hand, and making efforts to sell the mill for the defendant. For these latter services he was certainly not entitled to any lien upon said mill or upon the land on which it was located. Section 10 of the statute, upon which he relies for his lien, gives the book-keepers, clerks, agents, porters and other employes of *merchants, transportation companies and corporations* such lien, but the defenant here is shown not to belong to either of these classes. He was neither a merchant, a transportation company, nor a

corporation. But again, suppose we should attach some importance to the very general assertion of the plaintiff that the services for which he claims this lien were those of general manager for the defendant's mill, and should hold that, under the provisions of Section 2 of the statute referred to, a general manager of a mill was one of the persons who, uner that section, are given a lien upon mills for any labor done in the construction, repairing or *operation* thereof; even then, under the proofs, he was not entitled to a recovery in this action, and why? The proof shows that the mill *ceased operations* in June, 1887, his suit to enforce his supposed lien thereon was not instituted until February 21st, 1888, more than seven months after any labor was performed by him, according to his own statement, in connection with the *operation* of such mill. Section 17 of said statute provides: "That the liens provided for in this act shall be created at the time any labor is done or material furnished, and shall continune for *six months* from the last day upon which such labor was done or material furnished." At the time that he instituted his action to enforce it, the plaintiff's lien, if he was ever entitled to one, had lapsed and expired. We do not think that the proof shows that the plaintiff was ever entitled to any lien upon the defendant's property; but even if it be conceded that he did have such lien, the proof shows clearly that it had lapsed and expired before action brought to enforce it. He was therefore not entitled to a recovery in the form of action adopted, and the verdict therein was contrary to the evidence, and contrary to the law of the case.

The judgment is, therefore, reversed and a new trial awarded.